## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| STEPHEN L. SHRADER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08-00096 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered February 11, 2008 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 9 and 12.) and Plaintiff's Reply. (Document No. 13.)

The Plaintiff, Stephen L. Shrader, (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on April 7, 2005 (protective filing date), alleging disability as of January 1, 2003, due to hypothyroidism, heart problems, and depression.[1] (Tr. at 94, 95-97, 162, 181, 543-48.) The claims were denied initially and upon reconsideration. (Tr. at 549-50, 551-53, 556-58.) On January 3, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 60.) The

---

[1] Claimant filed prior applications for benefits on March 26, 2003, and on November 19, 2003. (Tr. at 15.) The claims were denied with no further appeals taken. (*Id.*)

hearing was held on September 21, 2006, before the Honorable Steven A. DeMonbreum. (Tr. at 559-95.) By decision dated March 28, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-35.) The ALJ's decision became the final decision of the Commissioner on December 14, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 7-9.) Claimant filed the present action seeking judicial review of the administrative decision on February 11, 2008, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[2] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (c) Rating the degree of functional limitation. (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in

---

[2] As noted above, these Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 1, 2003. (Tr. at 20, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the following severe impairments: coronary artery disease with placement of three stents, thyroid disease, chronic obstructive pulmonary disease ("COPD")/asthma, sleep apnea, mood disorder with depression and anxiety, history of alcohol abuse in self-reported remission, and obesity. (Tr. at 20, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 26, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform a range of unskilled, light level work as follows:

> Specifically, he retains the ability to push, pull, lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours total in an 8-hour workday; sit about 6 hours total in an 8-hour workday; occasionally climb

5

ramp/stairs, balance, stoop, kneel crouch and crawl; never climb
ladder/ropes/scaffolds; should avoid concentrated exposure to fumes, odors dusts,
gases, poor ventilation, etc., and to hazards such as dangerous machinery and
heights; and should avoid all exposure to extreme cold and extreme heat. His mental
impairments impact to the extent that he is moderately limited in his ability to
maintain attention and concentration for extended periods; and complete a normal
workday and workweek without interruptions from psychologically based symptoms,
and to perform at a consistent pact without an unreasonable number and length of
rest periods.

(Tr. at 27, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past

relevant work. (Tr. at 33, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a

cashier, an assembler, and a packer, at the light level of exertion. (Tr. at 34, Finding No. 10.) On this

basis, benefits were denied. (Tr. at 34-35, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

evidence which a reasoning mind would accept as sufficient to support a particular
conclusion. It consists of more than a mere scintilla of evidence but may be
somewhat less than a preponderance. If there is evidence to justify a refusal to direct
a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the

record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by

substantial evidence.

<u>Claimant's Background</u>

Claimant was born on March 20, 1953, and was 53 years old at the time of the administrative hearing, September 21, 2006. (Tr. at 33, 95, 543, 546, 564.) Claimant had a high school education and received a certificate in welding. (Tr. at 33, 187, 564, 568.) In the past, he worked as a construction worker/welding helper and welder/pipe fitter. (Tr. at 33, 149-51, 182-83, 565-68, 587.)

<u>The Medical Record</u>

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider Claimant's impairments related to fatigue and memory loss arising out of sleep apnea. (Document No. 9 at 3-7.) Claimant argues that this matter should be remanded for further consideration of his sleep apnea because the ALJ "failed to review or mention a large number of records which supported the allegations of poor sleep and fatigue and Judge DeMonbreum failed to make the rather straight forward connection between the claimant's documented sleep apnea and his poor sleep and fatigue." (<u>Id.</u> at 5.) Specifically, Claimant asserts that the ALJ referenced only one instance of Claimant's sleep difficulty as reported to Dr. Riaz; mentioned only briefly Dr. Patel's sleep study results and diagnosis of sleep apnea; made no mention of Claimant's reports of tiredness, fatigue, and memory problems to Dr. Amin; failed to state that the clinical indication for the bilateral carotid ultrasound on October 20, 2005, was for complaints of memory loss; failed to note Dr. Agarwal's notation that Claimant's sleep was affected by shortness of breath; and failed to discuss Dr. Javed's finding that Claimant was unable to sleep on

March 14 and 23, 2005. (Id. at 4-5.) Furthermore, Claimant asserts that the ALJ erred in referencing Dr. Patel's findings of mild to moderate sleep apnea because the designation "tells us nothing about what impact the sleep apnea would have on [Claimant's] residual functional capacity and it in no way discounts the veracity of [Claimant's] complaints of fatigue." (Document No. 13 at 2.) Finally, Claimant asserts that the ALJ failed to acknowledge Melinda Wyatt's findings that Claimant's recent memory was markedly impaired and that Claimant had objective findings of impaired recent and remote memory. (Id. at 3.)

The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 12 at 8-11.) The Commissioner notes that the ALJ's decision contains a thorough discussion of all the evidence of record, including the evidence regarding Claimant's sleep apnea, that the ALJ recognized Claimant's sleep apnea as a severe impairment, and that the ALJ accounted for any limitations associated with Claimant's sleep apnea in his residual functional capacity ("RFC") assessment. (Id. at 8.) The Commissioner asserts that the ALJ specifically considered Dr. Patel's sleep studies and diagnosis of obstructive sleep apnea, which was only mild to moderate in severity. (Id. at 8-9.) Regarding Claimant's complaints of fatigue and sleep difficulty, the Commissioner asserts that Claimant conceded in his brief that the ALJ addressed these complaints as reported by Dr. Agarwal, Ms. Wyatt, Dr. Riaz, Dr. Javed, and Dr. Patel. (Id. at 9.) Contrary to Claimant's assertion, the Commissioner states that the ALJ addressed Dr. Ramin's treatment notes but Claimant's reports of fatigue to Dr. Ramin "were duplicative of, and contemporaneous with, the complaints reported in the treatment records of Dr. Riaz and Dr. Javed." (Id.)

Furthermore, the Commissioner asserts that the ALJ specifically discussed Ms. Wyatt's opinion that Claimant had impaired concentration and recent memory, as well as the more recent

report of Dr. Riaz, who opined that Claimant had good attention and concentration and remote memory and fair recent memory. (Id. at 9-10.) Dr. Riaz also assessed Claimant with a GAF of 70, which indicated only mild limitations. (Id. at 10.) Regarding the bilateral carotid ultrasound on October 20, 2005, the Commissioner asserts that the ALJ referenced the procedure in his decision on two occasions, and further asserts that such test does not relate to Claimant's sleep apnea because it was performed before his diagnosis. (Id.)

Finally, the Commissioner asserts that the ALJ's RFC assessment is supported by Claimant's ability to perform activities that required significant mental and physical functional ability, such as caring for his diabetic daughter and young son, driving, walking two miles a day, shoveling snow, painting his house, and mowing his lawn. (Id. at 11.) Additionally, Claimant reported that he fished, did woodworking, gardened, and assisted a friend with a welding project. (Id.) Most significantly, despite Claimant's allegation of debilitating sleep apnea, the Commissioner points out that Claimant continued to smoke cigarettes against his physicians' advice. (Id.) Accordingly, the Commissioner contends that the ALJ "properly accounted for [Claimant's] sleep apnea and all of the associated limitations in his RFC assessment." (Id.)

Analysis.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the

ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a); 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2007); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective

medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence

of pain should be gathered and considered, but the absence of such evidence is not determinative.

Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are

considered to diminish her capacity to work to the extent that alleged functional limitations are

reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and

416.929(c)(4) (2007). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your
> prior work record, your statements about your symptoms, evidence submitted by
> your treating, examining, or consulting physician or psychologist, and observations
> by our employees and other persons. . . . Factors relevant to your symptoms, such
> as pain, which we will consider include:
>
> > (i) Your daily activities;
> >
> > (ii) The location, duration, frequency, and intensity of your pain or other
> > symptoms.
> >
> > (iii) Precipitating and aggravating factors;
> >
> > (iv) The type, dosage, effectiveness, and side effects of any medication you
> > take or have taken to alleviate your pain or other symptoms;
> >
> > (v) Treatment, other than medication, you receive or have received for relief
> > of your pain or other symptoms;
> >
> > (vi) Any measures you use or have used to relieve your pain or other
> > symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every
> > hour, sleeping on a board, etc.); and
> >
> > (vii) Other factors concerning your functional limitations and restrictions due
> > to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2007).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically
> determinable physical or mental impairment(s)--i.e., an impairment(s) that can be
> shown by medically acceptable clinical and laboratory diagnostic techniques--that

> could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the

12

allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless,  Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The medical evidence of record reveals that on February 22, 2006, Claimant was examined by Dr. Vishnu A. Patel, M.D., for Claimant's complaints of fatigue, asthma, and cough. (Tr. at 24, 508-09.) Claimant reported a significant worsening in his breathing after helping a friend with some welding. (Tr. at 24, 508.) He also reported a non-productive cough, as well as feelings that he was very tired and exhausted throughout the day. (Id.) Claimant noted that his sleeping was very restless, that he was told he snored very loudly, and that he fell asleep a few years ago while driving. (Id.) Dr. Patel observed that Claimant fell asleep in the waiting room prior to his exam and that he continued to smoke one pack of cigarettes per year for more than 30 years.[4] (Id.) Dr. Patel recommended an overnight polysomnography, which was conducted on April 17, 2006. (Tr. at 24, 509-10.) The sleep study revealed obstructive sleep apnea syndrome with an apnea hypopnea index of eleven per hour causing significant oxygen desaturation and frequent arousals, which caused interrupted sleep. (Tr. at 24, 510.) Test results revealed however, that Claimant's sleep apnea was mild to moderate with very loud moderate snoring. (Tr. at 24, 524.)

---

[4] The undersigned notes that Dr. Patel found that Claimant did not have a history of a thyroid disorder, which finding was in direct contradiction to the medical evidence that revealed a lengthy history of hypothyroidism. (Tr. at 508.)

13

On August 31, 2006, Dr. Riaz U. Riaz, M.D., described Claimant's sleep pattern as "fair" (Tr. at 491.), and on September 1, 2006, Dr. Mayank Amin, M.D., noted that Claimant had been using a CPAP machine at home as directed and that his complaints of tiredness, lack of energy, depression, and reports of some memory problems were improving slowly. (Tr. at 25-26, 444.) Dr. Amin also counseled Claimant about the need to stop smoking. (Tr. 25-26, 446.)

On September 14, 2006, Dr. Patel completed a form Residual Functional Capacity Assessment on which he opined that Claimant was capable of lifting twenty pounds occasionally and ten pounds frequently, standing or walking less than two hours in an eight-hour workday, sitting less than six hours in an eight-hour workday, and pushing and pulling with some limitation. (Tr. at 26, 484.) Dr. Patel noted that these limitations were assessed in part due to Claimant's shortness of breath, tiredness, and fatigue with essentially any exertion. (Id.) He further opined that Claimant could never climb, crouch, or crawl, and could occasionally balance, stoop, or kneel. (Tr. at 26, 485.) Dr. Patel opined that Claimant should avoid all exposure to temperature extremes, fumes, odors, dusts, gases, poor ventilation, and hazards, such as machinery and heights; should avoid even moderate exposure to wetness and humidity; and should avoid concentrated exposure to vibration. (Tr. at 26, 487.)

As Claimant points out, the medical record reflects Claimant's subjective complaints of fatigue, memory problems, and sleeping problems prior to Dr. Patel's diagnosis of obstructive sleep apnea. On April 15, 2004, Melinda Wyatt, M.S., a licensed psychologist and an independent consultative examiner, conducted a mental status evaluation of Claimant. (Tr. at 21-22, 297-302.) Ms. Wyatt noted Claimant's reports of fatigue and impaired memory, and observed that he appeared fatigued. (Tr. at 21, 298, 300.) On mental status examination, Ms. Wyatt opined that Claimant's

14

insight was adequate, his judgment was average, his immediate memory and persistence were within normal limits, his recent memory was markedly impaired, and his remote recall and concentration were impaired. (Tr. at 21, 300.) Contrary to Claimant's allegations, the ALJ specifically noted Ms. Wyatt's objective finding of "impaired recent and remote memory," albeit he did not insert specifically the "marked" modifier. (Tr. at 21, 301.) Ms. Wyatt further noted that Claimant reported taking naps during the day. (Tr. at 21-22, 301-02.)

On August 30, 2004, Claimant reported to Dr. Amin that he felt tired and fatigued and had trouble sleeping, and reported on November 17, 2004, that he was fatigued. (Tr. at 361, 364, 366-67.) Similarly, Dr. Javed acknowledged Claimant's reports of tiredness at times, and on July 27, 2006, his reports of weakness and fatigue. (Tr. at 436, 439.) Dr. Riaz conducted a psychiatric evaluation of Claimant on March 28, 2005, at which time Claimant reported difficulty sleeping and poor sleep quality, with sleep having a duration of only two or three hours. (Tr. at 23, 506.) On mental status exam however, Dr. Riaz opined that Claimant's recent memory was fair and his remote memory, attention, and concentration were good. (Tr. at 23, 507.) Furthermore, Dr. Riaz assessed Claimant a global assessment of functioning of 70, which was indicative of only mild limitations. (Id.)

On August 11, 2005, Dr. Rogelio T. Lim, M.D., however, opined on a form Physical Residual Functional Capacity Assessment that Claimant's fatigue was related to his depression. (Tr. at 382.) Dr. Amin likewise noted on January 23, 2006, Claimant's reports of fatigue, but further diagnosed hypertension, hypothyroidism, and depression. (Tr. at 454.) On January 5, 2005, Claimant reported to Dr. Mohammad Javed Rana, M.D., that sharp chest pain often awoke him. (Tr. at 22, 326.) He also noted that Claimant smoked two packs of cigarettes per day for the last thirty years.

15

(Id.) On February 14, 2005, Dr. Javed noted Claimant's reports of shortness of breath on exertion and his inability to sleep at night. (Tr. at 323.) On March 23, 2005, following Claimant's heart catheterization, Claimant further reported to Dr. Javed that he was doing very well now and that he just felt tired and fatigued at times. (Tr. at 321.)

Finally, Claimant underwent a bilateral carotid ultrasound on October 20, 2005, based on the clinical indication of lightheadedness and memory loss. (Tr. at 24, 424.) Though the ALJ did not specifically state the clinical indication for the procedure, the test results, which indicated bilateral plaque formation without evidence of hemodynamically significant carotid artery stenosis, did not support any correlation with alleged memory loss and sleep apnea, at least according to any medial interpretation of record. (Id.) Accordingly, the undersigned finds that any such error the ALJ may have committed in not mentioning the reason for the exam is harmless.

In addition to Claimant's obstructive sleep apnea, the record and the ALJ's decision, demonstrates that Claimant suffered from other impairments, including hypertension, coronary artery disease with the placement of three stents, hypothyroidism under good control, chronic obstructive pulmonary disease, asthma, a mood disorder with depression and anxiety, anemia, and a history of alcohol abuse in self-reported remission. (Tr. at 20-33,509, 511, 253.)

The ALJ reviewed and summarized all the evidence of record, as well as the testimony and reports of Claimant. Specifically, the ALJ summarized Claimant's testimony that he slept two hours at a time, felt tired during the day, had to lie down and take naps during day, that he napped during his lunch breaks when working, and that he experienced difficulty focusing and concentrating. (Tr. at 28.) In assessing Claimant's pain and credibility, the ALJ therefore found with regard to the threshold test, which is outlined above, that Claimant's "medically determinable impairments could

16

reasonably be expected to produce the alleged symptoms." (Tr. at 28.) The ALJ therefore, proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 28-34.) The ALJ noted the requisite factors, and then analyzed them in the opinion, concluding that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 28.)

For instance, the ALJ found that Claimant's mild cough was due to smoking, but that he was able to walk up to two miles a day. (Tr. at 29.) The ALJ specifically acknowledged Claimant's complaints of tiredness and fatigue, but noted that he reported to Dr. Javed on March 23, 2005, that he felt a lot better. (Tr. at 29, 442.) He further noted that Dr. Javed found that Claimant's functional capacity had improved significantly and recommended that he exercise regularly, stop smoking, lose weight, and continue his prescription medications. (Tr. at 29, 442-43.)  The ALJ found that despite Ms. Wyatt's earlier assessed memory impairments, Dr. Riaz subsequently opined on April 25, 2005, that Claimant's recent memory was fair and that his remote memory, attention, and concentration were good. (Tr. at 30.) More importantly, Dr. Riaz assessed a GAF of 70.[5] (Id.)

The ALJ further found that Claimant's reported activities precluded a finding of disability. The ALJ noted Claimant's various reports of gardening, shoveling snow, welding with a friend, mowing the lawn, as well as caring for his diabetic daughter and young son, assisting his daughter with childcare, accompanying his wife grocery shopping, watching television, driving, painting his house while on a ladder, and fishing twice a week, were contradictory to a finding of disability. (Tr.

---

[5]      The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 61-70 indicates that the person has "[s]ome mild symptoms . . . but generally functioning pretty well." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

at 30, 436, 438-39, 508.) The ALJ also gave appropriate weight to the opinion evidence of record, with which Claimant does not take issue. (Tr. at 31-34.)

In assessing Claimant's RFC, the undersigned finds that the ALJ considered all the evidence of record, including the evidence of Claimant's sleep apnea. Though the ALJ may not have mentioned every specific historical complaint of fatigue, memory problems, and sleep difficulties, it is clear from the ALJ's decision that he acknowledged and considered all of Claimant's impairments and associated complaints and symptoms. As the ALJ noted, many of Claimant's sleep apnea symptoms, particularly the fatigue, could have resulted from a number of Claimant's other impairments, including, but not limited to, thyroid disease, depression, coronary artery disease, and anemia. (Tr. at 31.) As stated above, Dr. Lim opined that Claimant's fatigue resulted from his depression. (Tr. at 382.) Additionally, Dr. Javed noted that Claimant's weakness and fatigue on July 27, 2006, resulted from his coronary artery disease status post stent placement. (Tr. at 436.) Similarly, Dr. Amin acknowledged Claimant's complaints of fatigue and diagnosed hypothyroidism and depression. (Tr. at 454.)

The ALJ specifically acknowledged Claimant's complaints of tiredness for a number of years, but noted that he continued to work. (Tr. at 31.) He further acknowledged that Claimant's tiredness could have been a symptom of his thyroid disease, for which he was treated and which was under control. (Id.) In the absence of evidence prior to Dr. Patel's diagnosis of obstructive sleep apnea correlating Claimant's subjective complaints of fatigue, memory loss, and sleep difficulties with sleep apnea, the undersigned finds that there was substantial evidence supporting the ALJ's decision that Claimant's similar historical complaints could have been attributed to other conditions. After Dr. Patel's diagnosis, the ALJ properly considered all the evidence relating to Claimant's sleep

18

apnea and determined that it constituted a severe impairment. Nevertheless, despite Claimant's assertions to the contrary, the evidence revealed that his sleep apnea was only mild to moderate in nature. Claimant argues that the "mild to moderate" label should have been discarded because it did not reveal any functional limitations from the sleep apnea. The undersigned finds that Claimant however, bore the burden of establishing functional limitations and in the absence of such significant limitations, the ALJ was constrained to find from the evidence that Claimant's sleep apnea was only mild to moderate in severity. Accordingly, the undersigned therefore finds that Claimant's arguments are without merit and that the ALJ's RFC and credibility assessments are supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 9.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: January 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge